**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-564**

| |
|---|
| KEITH HAWTHORNE *et. al.*, |
| |
| Plaintiffs, |
| |
| v. |
| |
| HIGH TENSION RANCH *et al.*, |
| |
| Defendants. |

**AMENDED COMPLAINT**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure and this Court's January 22, 2021 Order [Doc. 27], and with the consent of counsel for High Tension Ranch, LLC and Anthony Jarrett Callahan, Plaintiffs file and serve this Amended Complaint.

## PARTIES, JURISDICTION AND VENUE

1.      Keith Hawthorne (hereinafter "Mr. Hawthorne") is an adult citizen and resident of Mecklenburg County, North Carolina.

2.      KLH Acquisition Company, LLC (hereinafter "KLH") is a limited liability company formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

3.      Rivercross Capital, LLC (hereinafter "Rivercross") is a limited liability company formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

1

4.      Rufus Road Partners, LLC ("Rufus") is a limited liability company formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

5.      At all relevant times related to the claims herein, Mr. Hawthorne was a Manager for KLH, Rivercross and Rufus.

6.      Callahan Grading, LLC (hereinafter "CG") is a limited liability company formed and organized under the laws of the state of South Carolina with its principal place of business in York, South Carolina, but also conducting business in Mecklenburg County, North Carolina. During all relevant times to this action, CG had two members holding equal 50% interests in the company; Anthony Jarrett Callahan and Beverly Callahan.

7.      Grinding Specialists of the Carolinas, LLC (hereinafter "GS Carolinas") is a limited liability company formed and organized under the laws of the state of South Carolina with its principal place of business in York, South Carolina, but also conducting business in Mecklenburg County, North Carolina.  During all relevant times to this action, GS Carolinas purported to be owned 100% by Anthony Jarrett Callahan.

8.      Grinding Specialists, LLC (hereinafter "GS") is a limited liability company formed and organized under the laws of the state of South Carolina with its principal place of business in York, South Carolina, but also conducting business in Mecklenburg County, North Carolina.  During all relevant times to this action, GS purported to having two members holding equal 50% interests in the company; Anthony Jarrett Callahan and Harry J. Callahan.

2

9. High Tension Ranch, LLC ("HTR") is a limited liability company formed and organized under the laws of the state of South Carolina with its principal place of business in York, South Carolina, but also conducting business in Mecklenburg County, North Carolina.

10. Anthony Jarrett Callahan ("J. Callahan") is an adult citizen and resident of the State of South Carolina. J. Callahan operates, manages and directs all of the business for CG, GS, GS Carolinas and HTR.

11. The Howey Co., Inc. ("Howey Co."), is a corporation formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

12. Camden Land Co., LLC ("Camden") is a limited liability company formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

13. STGE Investments, LLC ("STGE") is a limited liability company formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

14. Deepe, LLC ("Deepe") is a limited liability company formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

15. FM Capital, LLC ("FM") is a limited liability company formed and organized under the laws of the state of North Carolina with its principal place of business and conducting business in Mecklenburg County, North Carolina.

3

16.     David S. Howey ("Howey") is an adult citizen and a resident of the State of North Carolina. Howey manages Howey Co., Camden, STGE, Deepe and FM.  Howey runs the day-to-day affairs of Howey Co., Camden, STGE, DEEPE and FM.

17.     Hereinafter, HTR, J. Callahan, Howey Co. Camden, STGE, Deepe, FM and Howey will be collectively referred to as "Defendants."

18.     Venue is proper in this District because all of the Defendants are either residents in the Western District of North Carolina and/or transact business in the Western District and, pursuant to 28 U.S.C. §1391(b)(2)(3), a substantial part of the events and lack of events giving rise to these claims arose in this District.  In addition, each of the Defendants are subject to personal jurisdiction in this District.

19.     Plaintiffs filed their initial, first Complaint on October 9, 2020 (hereinafter the "Complaint").

## UNDERLYING SOUTH CAROLINA BANKRUPTCIES

20.     On October 15, 2018, CG, GS and GS Carolinas filed separate, voluntary petitions for relief in the United States Bankruptcy Court for the District of South Carolina under Chapter 11 of the United States Bankruptcy Code.  CG's bankruptcy case is designated as Case Number 18-05220-hb, GS's bankruptcy case is designated as Case Number 18-05225-hb and GS Carolinas' bankruptcy case is designated as Case Number 18-05223-hb. Hereinafter, CG, GC and GS Carolinas will be referred to as the ("Debtors").

21.     On March 26, 2019, the above-mentioned Debtors' bankruptcy cases were converted from Chapter 11 cases to Chapter 7 cases.  Janet B. Haigler was appointed as the Chapter 7 Trustee (the "CG Trustee") in the CG bankruptcy.  Robert F. Anderson was

4

appointed as the Chapter 7 Trustee (the "GC Trustee") in the GS and GS Carolinas' bankruptcies. Collectively, the CG Trustee and the GC Trustee will be referred to as the "Bankruptcy Trustees".

22.　　On November 13, 2019, the United States Bankruptcy Court for the District of South Carolina substantively consolidated GS and GS Carolinas' bankruptcy cases.

23.　　On or about February 28, 2020, the Plaintiffs executed a Settlement Agreement (hereinafter "Settlement Agreement") and subsequently executed a Joint Defense and Prosecution Agreement (hereinafter the "JPA"). A copy of the JPA is attached as Exhibit 2 to Plaintiffs' Memorandum in Response to the Moving Defendants' Motion to Dismiss, filed contemporaneously herewith.

24.　　Pursuant to the JPA, the Bankruptcy Trustees (on the one hand) and Mr. Hawthorne, KLH, Rivercross, Rufus and other Hawthorne related entities (on the other hand) agreed as follows:

> The Parties and their Counsel (which, for purposes of this Agreement, include the Parties' corporate counsel and outside counsel and their law firms, agents, retained accountants, auditors, representatives and employees) are and will continue to cooperate, communicate and work together in the Joint Defense and Prosecution to coordinate strategy and to address such issues as they deem to be of common interest to them in connection with the litigation brought by them or brought against them. In furtherance of this Agreement, the Parties, through Counsel, may allocate, assign and organize such matters and the cost thereof by formal or informal agreements among themselves by the use of committees, lead counsel, coordinating counsel, subcommittees, or otherwise, as they deem advisable. No party shall be required to continue in the prosecution of claims against any person to the extent the party determines (in its sole discretion) that continued prosecution is inadvisable (based upon an analysis of the likelihood of collection or otherwise). (JPA, Pg. 2).

5

25.    The Settlement Agreement was presented to the Bankruptcy Court for approval.  On April 16, 2020, the Honorable Helen E. Burris, Chief US Bankruptcy Judge, District of South Carolina approved the Settlement Agreement in a written Consent Order Approving Settlement Agreement (hereinafter the "Consent Order").

26.    On January 15, 2021, the Bankruptcy Trustees filed a Motion seeking approval to employ JMD, and requesting other relief.  The Howey Defendants opposed the relief sought.

27.    After a full and complete evidentiary hearing, Judge Burris entered an Order (hereinafter the "Bankruptcy Order").  A copy of the Bankruptcy Order is attached as Exhibit 1 to Plaintiffs' Memorandum in Response to the Moving Defendants' Motion to Dismiss, filed contemporaneously herewith.

28.    In her Bankruptcy Order, Judge Burris made the following findings:

> (a) The Bankruptcy Trustees and their counsel, together with JMD, have worked together to purse the NC Litigation (i.e. the pending litigation) (hereinafter the "NC Litigation").
> (b) At some point after the Consent Order was executed, an attorney client relationship was formed between the Bankruptcy Trustees and JMD.
> (c) The Bankruptcy Trustees intended for JMD to serve as their counsel.
> (d) The Bankruptcy Trustees reviewed the substance of and authorized the filing of the Complaint in the NC Litigation.
> (e) The prior inclusion of the Debtors in the NC Litigation was in error.
> (f) The *pro hac vice* admissions in the NC Litigation further evidence the Bankruptcy Trustees' intent for JMD to act as local counsel.
> (g) Basic terms of the attorney client engagement can be ascertained.
> (h) The parties agreed to the terms of compensation which are found in the Settlement Agreement.
> (i) Employment of NC counsel is essential and in the best interests of the estates.

6

(j) Buric's declaration, included with the Motion, explains that the interests of the Claimants and the Bankruptcy Trustees are aligned.

29.     Based on the above findings, the Court entered an Order approving JMD and Mr. Buric's employment (effective January 15, 2021) as associated counsel for the Bankruptcy Trustees to fulfil all obligations required under the Rules pending in the W.D.N.C.

30.     The Bankruptcy Court recognized that it could not enter the Bankruptcy Order *nunc pro tunc*.

31.     Judge Burris made it clear that "the significance of the effective date [of JMD's employment as counsel for the Bankruptcy Trustees] awaits determination from the District Court in the NC Litigation as it considers the motion to dismiss."

32.     The Bankruptcy Trustees join in this suit as party plaintiffs.

## FACTUAL ALLEGATIONS

33.     Mr. Hawthorne and Howey were very good friends, actually, the best of friends, for a significant period of time.  Their friendship resulted in Mr. Hawthorne placing significant trust and confidence in Howey, so much so, that Mr. Hawthorne entered into business ventures and partnerships with Howey.  In many of those business ventures and partnerships, Mr. Hawthorne invested millions of dollars; conversely, Howey invested little or nothing.  During the relevant times, Howey managed those businesses and partnerships through his position as Manager, Trustee and/or Agent.

34.     As a result of the deep friendship and significant trust and confidence Mr. Hawthorne placed in Howey, on March 13, 2017, Mr. Hawthorne executed a General

7

Power of Attorney (hereinafter "POA"), appointing Howey as Mr. Hawthorne's Attorney-in-Fact.

35.     Pursuant to the POA, Mr. Hawthorne granted Howey "the power to do and perform in a fiduciary capacity as [his] Agent may deem advisable anything of any character which [Mr. Hawthorne] might do or perform for [himself] if personally present and acting, including but not limited to, the specific powers set forth [in the POA]…"

36.     On March 23, 2017, Mr. Hawthorne executed an Appointment of Independent Trustee, appointing Howey the Independent Trustee of the Hawthorne Family GST Irrevocable Trust U/A/D March 16, 2009 (hereinafter the "Family Trust").

37.     On March 23, 2017, Howey executed an Acceptance of Appointment of Independent Trustee, accepting his appointment of Independent Trustee of the Family Trust.

38.     On March 23, 2017, Mr. Hawthorne executed an Appointment of Independent Trustee, appointing Howey the Independent Trustee of the The Hawthorne Children's GST Irrevocable Trust U/A/D March 17, 2009 (hereinafter the "Children's Trust").

39.     On March 23, 2017, Howey executed an Acceptance of Appointment of Independent Trustee, accepting his appointment of Independent Trustee of the Children's Trust.

40.     Hereinafter, the Family Trust and the Children's Trust will be referred to as the "Trusts."

41.     The Trusts own interests in numerous companies that Mr. Hawthorne owns, operates and/or manages.

42.     The Trusts had a significant interest in KLH and Rivercross.

43.     In April, 2017, Mr. Hawthorne was involved in a serious automobile accident resulting in Mr. Hawthorne spending 10+ months in the hospital, undergoing more than 50 significant surgeries.

44.     As a result of Mr. Hawthorne's incapacity, Howey became Mr. Hawthorne's Agent.

45.     Howey, acting in Mr. Hawthorne's stead and in the place of Mr. Hawthorne, became the Manager for KLH, Rivercross and Rufus and acted as Manager for those companies.  Howey has admitted and acknowledged that he acted as and was the Manager for KLH, Rivercross and Rufus.

46.     On March 17, 2017, Howey, acting in his capacity as either Independent Trustee and/or Agent operating as Attorney-in-Fact under the POA (hereinafter, Howey's actions as Agent and/or Independent Trustee will be referred to as "Fiduciary"), loaned CG $575,000.00.  The $575,000 loan was given to CG in the form of a check drawn on KLH's account.  The $575,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on March 28, 2017 and guaranteed by J. Callahan.

47.     GS gave Rivercross a check (number 8448) to repay the $575,000 loan. Check number 8448 was returned for NSF.  The $575,000 loan has not been repaid.

48.     Despite the fact that the $575,000 loan was not repaid as required, on April 10, 2017, Howey, acting in his capacity as Fiduciary, loaned HTR $400,000.  The $400,000

loan was given to HTR in the form of wire from KLH's account. The $400,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on April 24, 2017 and guaranteed by J. Callahan and CG.

49. GS gave Rivercross a check (number 8449) to repay the $400,000 loan. Check number 8449 was returned for NSF. The $400,000 loan has not been repaid.

50. Despite the fact that the $575,000 and $400,000 loans were not repaid as required, on May 1, 2017, Howey, acting in his capacity as Fiduciary, loaned CG another $550,000.00. The $550,000 loan was given to CG in the form of check drawn on KLH's account. The $550,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on June15, 2017 and guaranteed by J. Callahan and CG.

51. CG gave KLH a check (number 23908) to repay the $550,000 loan. Check number 23908 was returned for NSF. The $550,000 loan has not been repaid.

52. Despite the fact that the $575,000, $400,000 and $550,000 loans were not repaid as required, on May 12, 2017, Howey, acting in his capacity as Fiduciary, loaned CG another $475,000.00. The $475,000 loan was given to CG in the form of check drawn on KLH's account. The $475,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on July11, 2017 and guaranteed by J. Callahan and CG.

53. GS gave Rivercross a check (number 8450) to repay the $475,000 loan. Check number 8450 was returned for NSF. The $475,000 loan has not been repaid.

54. Despite the fact that the $575,000, $400,000, $550,000 and $475,000 loans were not repaid as required, on May 15, 2017, Howey, acting in his capacity as Fiduciary,

loaned CG another $456,000.00. The $456,000 loan was given to CG in the form of check drawn on KLH's account. The $456,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on May 19, 2017 and guaranteed by J. Callahan and CG.

55.     GS gave Rivercross a check (number 8451) to repay the $456,000 loan. Check number 8451 was returned for NSF. The $456,000 loan has not been repaid.

56.     Despite the fact that the $575,000, $400,000, $550,000, $475,000 and $456,000 loans were not repaid as required, on May 23, 2017, Howey, acting in his capacity as Fiduciary, loaned CG another $430,000.00. The $430,000 loan was given to CG in the form of check drawn on KLH's account. The $430,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on July 7, 2017 and guaranteed by J. Callahan and CG.

57.     GS gave Rivercross a check (number 8452) to repay the $430,000 loan. Check number 8452 was returned for NSF. The $430,000 loan has not been repaid.

58.     Despite the fact that the $575,000, $400,000, $550,000, $475,000, $456,000 and $430,000 loans were not repaid as required, on June 20, 2017, Howey, acting in his capacity as Fiduciary, loaned CG another $600,000.00. The $600,000 loan was given to CG in the form of check drawn on KLH's account. The $600,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on August 19, 2017 and guaranteed by J. Callahan and GS. The $600,000 loan has not been repaid.

59.     Despite the fact that the $575,000, $400,000, $550,000, $475,000, $456,000, $430,000 and $600,000 loans were not repaid as required, on July 12, 2017,

11

Howey, acting in his capacity as Fiduciary, loaned HTR another $585,000.00. The $585,000 loan was given to HTR in the form of a wire from KLH's account. The $585,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on August 9, 2017 and guaranteed by J. Callahan and HTR. The $585,000 loan has not been repaid.

60. Despite the fact that the $575,000, $400,000, $550,000, $475,000, $456,000, $430,000, $600,000 and $585,000 loans were not repaid as required, on July 12, 2017, Howey, acting in his capacity as Fiduciary, loaned HTR another $385,000.00. The $385,000 loan was given to HTR in the form of a wire from KLH's account. The $385,000 loan was secured by a Promissory Note identifying Rivercross as the Lender, maturing on August 17, 2017 and guaranteed by J. Callahan and HTR. The $385,000 loan has not been repaid.

61. As of the filing of this Complaint, the $4,456,000 of Plaintiffs' money that Howey, as a fiduciary, loaned to the entities identified above, has not been repaid.

62. On September 27, 2017, CG, HTR and J. Callahan executed an Agreement, wherein CG, HTR and J. Callahan memorialized its promise to Rivercross that they would repay Rivercross the $575,000, $400,000, $550,000, $475,000, $456,000, $430,000, $600,000, $585,000 and $385,000 loans referenced in paragraph 36-50 above. Pursuant to the Agreement, CG, HTR and J. Callahan promised to repay the debt on the following payment schedule: $100,000 per week starting on Friday, September 29, 2017 and continuing on each successive Wednesday for 50 additional payments, for a cumulative total of $5,100,000.00 towards the total amount of $5,369,402.52; and a final payment

12

of $269,402.52 by Thursday, September 27, 2018. As of the drafting of this Amended Complaint, CG, HTR and J. Callahan have not made any payments pursuant to their promises set forth in the Settlement Agreement.

63.     On November 8, 2019, Hawthorne learned for the first time that between May 23, 2017 and July 25, 2017, J. Callahan, individually or through one of his entities (CG, GS, GS Carolinas and/or HTR), transferred to Howey or one of his entities nearly $17 million, as follows:

    (a)     GS Carolinas and GS transferred the following funds (the "Grinding Transfers") to the following Defendants:

        A.     To Howey: $3,592,500.00.
        B.     To Howey Co.: $3,309,000.00.
        C.     To Camden: $1,720,000.00.
        D.     To STGE: $1,424,000.00.
        E.     To Deepe: $740,000.00.
        F.     To FM: $525,000.00.
        G.     <u>To HTR: $605,000.00</u>
            Total – $11,915,500.00

    (b) CG transferred the following funds (the "CG Transfers") to the following Defendants:

        A.     To Howey: $1,168,240.00
        B.     To Howey Co.: $250,000.00
        C.     To HTR: $3,078,816.63
        D.     <u>To STGE: $285,000.00</u>
        E.     Total - $4,782,056.63

64.     The Grinding Transfers and CG Transfers were within the two years immediately preceding the filing of Debtors bankruptcies.

13

65.     Upon Information and belief, Defendants conspired together to orchestrate the Grinding Transfers and the CG Transfers to facilitate the eventual transfer of funds to the Howey Defendants.

66.     Upon information and belief, the Debtors (individually or through another Callahan entity) did not receive consideration for either the Grinding Transfers or CG Transfers and did not owe any obligation to Howey, The Howey Co., Camden, STGE, Deepe, HTR, and/or FM.

67.     Upon information and belief, the Grinding Transfers and CG Transfers were for the benefit of the insiders of the Debtors or other entities and not for the benefit of the Debtors.

68.     Upon information and belief, the Debtors owed certain creditors during the periods of the Grinding Transfers and CG Transfers, included on the bankruptcy schedules of the Debtors, which the Debtors still owe today.

69.     Upon information and belief, the Debtors were insolvent during the two years immediately preceding the filing of their bankruptcies in that their liabilities exceeded their assets and they were unable to pay their debts as they became due.

70.     Upon information and belief, the Defendants are insiders of the Debtors.

71.     Upon information and belief, at least $4,456,000 of the Grinding Transfers and CG Transfers which J. Callahan and/or his entities transferred to Howey and/or Howey's entities, came from the loans Howey made on behalf of KLH and/or Rivercross to J. Callahan and/or his companies.

14

72.     Howey, The Howey Co., Camden, STGE, Deepe, HTR and/or FM knowingly accepted the Grinding Transfers and CG Transfers from J. Callahan and/or one of his entities, knowing that those funds were coming from the loans J. Callahan owed to KLH and/or Rivercross but did not satisfy.  In short, Howey, while acting as a fiduciary to Hawthorne, and by extension KLH and Rivercross, accepted money from J. Callahan that rightly belonged to KLH and/or Rivercross, at a time he was acting as Manager for KLH and/or Rivercross and owed KLH and Rivercross a fiduciary duty.  Hawthorne, KLH and Rivercross first learned of this conduct giving rise to a breach of fiduciary duty on November 8, 2019.

73.     Upon information and belief, Howey manages the day to day operations of Howey Co.

74.     Upon information and belief, Howey manages the day to day operations of Camden.

75.     Upon information and belief, Howey manages the day to day operations of STGE.

76.     Upon information and belief, Howey manages the day to day operations of Deepe.

77.     Upon information and belief, Howey manages the day to day operations of FM.

78.     Upon information and belief, Howey operates Howey Co. without regard to any corporate formalities.

79.     Upon information and belief, Howey operates Camden without regard to any corporate formalities.

80.     Upon information and belief, Howey operates STGE without regard to any corporate formalities.

81.     Upon information and belief, Howey operates Deepe without regard to any corporate formalities.

82.     Upon information and belief, Howey operates FM without regard to any corporate formalities.

83.     Upon further information and belief, Howey exercised complete dominion and control over Howey Co. and used that dominion and control to perpetrate a wrong. Plaintiffs have been directly and proximately harmed by such dominion and control.

84.     Upon further information and belief, Howey exercised complete dominion and control over Camden and used that dominion and control to perpetrate a wrong. Plaintiffs have been directly and proximately harmed by such dominion and control.

85.     Upon further information and belief, Howey exercised complete dominion and control over STGE and used that dominion and control to perpetrate a wrong. Plaintiffs have been directly and proximately harmed by such dominion and control.

86.     Upon further information and belief, Howey exercised complete dominion and control over Deepe and used that dominion and control to perpetrate a wrong. Plaintiffs have been directly and proximately harmed by such dominion and control.

87.     Upon further information and belief, Howey exercised complete dominion and control over FM and used that dominion and control to perpetrate a wrong.  Plaintiffs have been directly and proximately harmed by such dominion and control.

88.     Upon information and belief, Howey Co. is inadequately capitalized.

89.     Upon information and belief, Camden is inadequately capitalized.

90.     Upon information and belief, STGE is inadequately capitalized.

91.     Upon information and belief, Deepe is inadequately capitalized.

92.     Upon information and belief, FM is inadequately capitalized.

93.     Upon information and belief, and at all times relevant to the events described herein, Howey, Howey Co., Camden, STGE, Deepe and FM were alter egos of each other and each permitted the other to act in the manner it did.  As such, Howey, Howey Co., Camden, STGE, Deepe and FM should not be entitled to hide behind the corporate form and should instead be held jointly and severally liable for the conduct described herein.

94.     Howey, Howey Co., Camden, STGE, Deepe and FM are also personally liable for the tortious conduct and statutory violations based on their individual participation in those activities.

95.     Acting as Mr. Hawthorne and therefore as manager for Rivercross and KLH, Howey, individually and through Howey Co., Camden, STGE, Deepe and/or FM, owed Mr. Hawthorne, KLH and Rivercross a fiduciary duty.

96.     Howey, Howey Co., Camden, STGE, Deepe and FM's conduct, as described herein, amounts to self-dealing and breaches of their fiduciary duties.

17

97.     In mid-January, 2020, Mr. Hawthorne, for himself, KLH and Rivercross, made demand upon Howey, Howey Co., Camden, STGE, Deepe, FM, J. Callahan, and HTR that they repay KLH and/or Rivercross the $4,456,000.

98.     Howey, Howey Co., Camden, STGE, Deepe, FM, J. Callahan, and HTR have refused to pay KLH and/or Rivercross the $4,456,000 demanded.

99.     Upon information and belief, Beverly Callahan did not participate in the alleged conduct described herein, nor did she have knowledge of the same.

100.    Upon information and belief, Harry J. Callahan did not participate in the alleged conduct described herein, nor did he have knowledge of the same.

101.    The conduct described above is in or effecting commerce.

102.    The conduct described above constitutes a conversion of KLH's and/or Rivercross' property.

103.    Mr. Hawthorne, KLH and Rivercross have been damaged as a direct and proximate result of the conduct described above.

## RUFUS ROAD FRAUD

104.    Howey, while  acting in his fiduciary capacity and as Manager for Rufus, along with  J. Callahan, entered into a scheme to defraud Rufus.

105.    While acting as Manager for Rufus, Howey executed a contract on behalf of Rufus Road, wherein J. Callahan and CG agreed to perform certain grading work on the Rufus Road property.  The initial value of the contract was in excess of $4,000,000.00.

106.    Howey, Callahan and CG executed a contract for the grading work.

18

107.     Before Callahan and/or CG performed any work, Howey, as Rufus Road's Manager, and Callahan amended the contract from $4,000,000 to $3,000,000 (for the same scope of work)., In exchange for this $1,000,000 reduction, J. Callahan requested, and Howey agreed, to advance Callahan and CG the $3,000,000.   This $3,000,000 advance occurred before any work was performed.

108.     On or around June 25, 2017, Howey delivered a check drawn on KLH's account made payable to J. Callahan in the amount of $3,000,000 as prepayment for CG's alleged work.  Mr. Hawthorne and Rufus learned of the $1,000,000 reduction to the contract in exchange for a $3,000,000 pre-payment, after November 8, 2019.

109.     At the time that Howey delivered the $3,000,000 to J. Callahan, J. Callahan had no money in his bank account and had significant financial obligations to creditors.

110.     J. Callahan and Howey entered into a scheme, wherein Howey advanced $3,000,000 of KLH's funds to J. Callahan, and J. Callahan then diverted a portion of KLH's $3,000,000 to Howey and/or a Howey entity.  Mr. Hawthorne and Rufus learned of this scheme after November 8, 2019.

111.     After November 8, 2019, Mr. Hawthorne and Rufus learned that J. Callahan and/or his companies did not perform $3,000,000 worth of work to the Rufus property.

112.     In addition to diverting a portion of KLH's $3,000,000 to Howey and/or a Howey entity, and despite receiving the $3,000,000.00 for prepayment of services, Howey, Callahan and CG conspired to use approximately $1,798,400.00 of the $3,000,000 for their own purposes, unrelated to improvement of the Rufus Road property.  Mr. Hawthorne and Rufus did not learn of this until after November 8, 2019.

19

## FIRST CLAIM FOR RELIEF
## [Breach of Fiduciary Duty – Howey, Howey Co., Camden, STGE, Deepe, FM]

113.    Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

114.    Mr. Hawthorne was the manager for KLH, Rivercross and Rufus Road. When Howey acted for Mr. Hawthorne (as Agent and/or Independent Trustee) on behalf of KLH, Rivercross and/or Rufus, Howey acted as a manager for those entities and owed those entities a fiduciary duty.

115.    Under oath, Howey admits that he acted as Manager for the LLC; stating that: (i) "[a]s Manager of LLCs,-I had day-to-day businesses I had to – I had to administer on some of them;" (ii) "But yes, I did, as a Manager I did – I did that.  I did take action…;" (III) "I dealt with things having to do with the -- as Manager of the entities…;" (iv) "I mean, there was something different all the time and we took action.  I don't know exactly – but typically most of them were as Manager in just normal course of business;"  (v) While I was Manager, like I sold the tennis piece…;" (vi) I signed [business documents] as Manager of individual entities."

116.    Mr. Hawthorne, KLH, Rivercross and Rufus Road reposed a special trust and confidence in Howey, who in equity and good conscience, individually and on behalf of Howey Co., Camden, STGE, Deepe and FM, was bound to act in good faith and with due regard for Mr. Hawthorne, KLH, Rivercross and Rufus Road's interests.

117.    As a result of the POA and as an Independent Trustee, a special duty exists between Howey and Mr. Hawthorne, KLH, Rivercross and Rufus Road (as well as Mr. Hawthorne's other entities).

118. Mr. Hawthorne, KLH, Rivercross and Rufus Road have suffered injuries, as more particularly described above. As a member of KLH, Rivercross and Rufus, Mr. Hawthorne is directly damaged by Howey (and/or his entities) diverting money from KLH, Rivercross and Rufus.

119. Howey breached his fiduciary duties to Mr. Hawthorne, KLH, Rivercross and Rufus Road by accepting money from J Callahan (and/or his companies) that should have been paid to Mr. Hawthorne, KLH, Rivercross and/or Rufus. Howey and his companies accepted this money during the time that Howey was a Manager for KLH, Rivercross and/or Rufus, and therefore should have been looking out for the best interests of KLH, Rivercross and/or Rufus. This conduct was not discovered until on or after November 8, 2019.

120. Howey's conduct in breach of his fiduciary obligations, was taken for Howey's own benefit and to the detriment of, at least, Mr. Hawthorne, KLH, Rivercross and Rufus Road.

121. As a direct and proximate result of the breaches of their fiduciary duties as alleged and set-forth above, Mr. Hawthorne, KLH, Rivercross and Rufus Road have been damaged in an amount to be determined at trial.

122. Howey's breaches of his fiduciary duties were malicious, intentional, willful, and done with a reckless and wanton disregard for Mr. Hawthorne, KLH, Rivercross and Rufus Road. Mr. Hawthorne, KLH, Rivercross and Rufus Road are, therefore, entitled to recover punitive damages from Howey pursuant to N.C. Gen. Stat. §§ 1D-1, et seq.

21

## SECOND CLAIM FOR RELIEF
## [Constructive Fraud – Howey, Howey Co., Camden, STGE, Deepe, FM]

123.    Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

124.    As described above, Mr. Hawthorne, KLH, Rivercross and Rufus Road (on the one hand) and Howey (on the other hand) are in relationships of trust and confidence, wherein Howey owes Mr. Hawthorne, KLH, Rivercross and Rufus Road a fiduciary duty.

125.    While in a position of trust and confidence to Mr. Hawthorne, KLH, Rivercross and Rufus, Howey, for himself and his companies, created circumstances that lead up to and surrounded the transactions complained of herein.

126.    Howey breached his fiduciary duty to Mr. Hawthorne, KLH, Rivercross and Rufus Road, and sought to benefit himself (and his companies) to the detriment of Mr. Hawthorne, KLH, Rivercross and Rufus Road.

127.    To the extent Howey used his companies, Howey Co., Camden, STGE, Deepe and FM, as described above to facilitate the actions giving rise to his breach of his fiduciary duties, these companies participated, aided, and abetted these breaches and such conduct constitutes a constructive fraud.

128.    Such conduct constitutes a constructive fraud.

129.    As a direct and proximate result of the constructive fraud, Mr. Hawthorne, KLH, Rivercross and Rufus Road have been damaged in an amount to be determined at trial.

130.    The constructive fraud was malicious, intentional, willful, and done with a reckless and wanton disregard for Mr. Hawthorne, KLH, Rivercross and Rufus Road's

22

rights. Mr. Hawthorne, KLH, Rivercross and Rufus Road are therefore entitled to recover punitive damages from Howey pursuant to N.C. Gen. Stat. §§ 1D-1, et seq.

**THIRD CLAIM FOR RELIEF**
**[Piercing the Corporate Veil/Alter Ego – Howey, Howey Co., Camden, STGE, Deepe, FM]**

131.    Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

132.    Upon information and belief, Howey exercises complete dominion and control over Howey Co., Camden, STGE, Deepe and FM, and has discretion to make decisions on behalf of Howey Co., Camden, STGE, Deepe and FM.

133.    Upon information and belief, Howey Co., Camden, STGE, Deepe and FM and Howey are the alter egos of each other and the corporate entities have no separate mind, will, or existence of their own.

134.    As described above, Howey used his dominion and control to commit fraud, violate legal duties, and otherwise harm Mr. Hawthorne, KLH, Rivercross and Rufus Road.

135.    Howey's dominion and control over Howey Co., Camden, STGE, Deepe and FM is a direct and proximate cause of Mr. Hawthorne, KLH, Rivercross and Rufus Road' injuries.

136.    Because Howey, Howey Co., Camden, STGE, Deepe and FM's actions are indistinguishable, Mr. Hawthorne, KLH, Rivercross and Rufus Road are entitled to pierce the corporate veil and hold Howey personally liable for the actions carried out under the corporate names - Howey Co., Camden, STGE, Deepe and FM, all of whom are jointly and severally liable for each other's conduct.

23

## FOURTH CLAIM FOR RELIEF
## [Conversion - All Defendants]

137.   Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

138.   Defendants' actions as described above constitute a conversion of Plaintiffs' property and constitute an unauthorized assumption and exercise of ownership rights over Plaintiffs' property, which undoubtedly and knowingly belongs to Plaintiffs. Hawthorne, KLH, Rivercross and Rufus Road did not learn of this conversion until November 8, 2019.

139.   Plaintiffs made demand upon all Defendants that they deliver to Plaintiffs the money converted as described above, but all Defendants have refused.

140.   Defendants' actions constitute a conversion of Plaintiffs' property.

141.   Defendants' conversion of Plaintiffs' property is to the exclusion of Plaintiffs, preventing Plaintiffs from asserting their right of ownership and possession over the same.

142.   As a direct and proximate result of Defendants' conversion, Plaintiffs have been damaged in an amount to be determined at trial.

143.   Defendants' conversion is and was malicious, intentional, willful, and with a reckless and wanton disregard of Plaintiffs' rights.  Plaintiffs are therefore entitled to recover punitive damages from Defendants, jointly and severally, pursuant to North Carolina General Statute §1D-1, et seq.

## FIFTH CLAIM FOR RELIEF
## [Facilitation of Fraud/Civil Conspiracy – All Defendants]

144.    Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

145.    Upon information and belief, Defendants undertook and agreed to defraud Plaintiffs as described above.

146.    Defendants committed overt and tortious acts in furtherance of the agreement.

147.    Plaintiffs have suffered damages as a direct and proximate result of Defendants' facilitation of fraud and civil conspiracy in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## [Breach of Contract – J. Callahan and HTR]

148.    Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

149.    As described more fully above, J. Callahan and HTR entered into valid and enforceable Promissory Notes with KLH and/or Rivercross.

150.    The Promissory Notes were entered into for good and valuable consideration and the parties mutually assented to the terms through offer and acceptance so as to establish a meeting of the minds.

151.    KLH and Rivercross fulfilled all of their material obligations under the Promissory Notes.

152.    J. Callahan and HTR breached the Promissory Notes.

25

153.    The reason these defendants breached the Promissory Notes is because of the transfers as outlined below.  The Grinding Transfers and CG Transfers left CG, GS and GS Carolinas insolvent and unable to pay their obligations, resulting in their bankruptcies.

154.    As a direct and proximate result of J. Callahan and HTR breaches, KLH and Rivercross have been damaged in an amount to be determined at trial, but believed to exceed $4,456,000.00.

**SEVENTH CLAIM FOR RELIEF**
**[Setting Aside of Fraudulent Conveyance Pursuant to 11 U.S.C. § 544 and S.C. CODE ANN. § 27-23-10 for Transfer Made Without Valuable Consideration – Howey, Howey Co., Camden, STGE, Deepe, FM,  HTR]**

155.    Plaintiffs restate and reallege the allegations contained above as if fully set forth herein, and the Bankruptcy Trustees specifically state as follows:

156.    CG, GS and GS Carolinas are South Carolina entities whose principal place of business is in South Carolina.  The liquid assets of CG, GS and GS Carolinas are located in South Carolina.  Thus, as to CG, GS and GS Carolinas, South Carolina law is the appropriate choice of law governing their transactions.

157.    Under South Carolina Law:

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands ... goods and chattels or any of them, ... which may be had or made ... for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns ... ) to be clearly and utterly void ... and of no effect, ... any other matter or thing to the contrary notwithstanding.

S.C. CODE ANN. § 27-23-10 (emphasis added).

26

158. This section of the South Carolina Code is often referred to as the Statute of Elizabeth. The basic principle of the Statute of Elizabeth is that one must do equity before one can be generous.

159. In this case, GS voluntarily transferred the Grinding Transfers to Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR, and CG voluntarily transferred the CG Transfers to Howey, Howey Co., HTR, and STGE for inadequate consideration.

160. Under South Carolina law, the South Carolina Supreme Court has held as follows:

> We have held that under [the Statute of Elizabeth], conveyances shall be set aside under two conditions: First, where the transfer is made by the grantor with the actual intent of defrauding his creditors where that intent is imputable to the grantee, even though there is a valuable consideration; and, second, where a transfer is made without actual intent to defraud the grantor's creditors, but without consideration.... If the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors needs be proven. Windsor Props., Inc. v. Dolphin Head Constr. Co., 331 S.C. 466, 470–71, 498 S.E.2d 858, 860 (1998).

161. Pursuant to the Statute of Elizabeth, conveyances may be set aside when there is inadequate consideration. In this case, Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR received the Grinding Transfers and Howey, Howey Co, HTR and STGE received the CG Transfers for no consideration flowing back to the Debtors.

162. The Grinding Transfers and CG Transfers were made while the Debtors were insolvent or rendered the Debtors insolvent.

163. At all times during which the Grinding Transfers and CG Transfers were made, the Debtors were indebted to other existing creditors as included on the bankruptcy schedules of the Debtors or pursuant to proofs of claim filed in GG's

27

bankruptcy case, GS's bankruptcy case, and GS Carolina's bankruptcy case.

164.    Such existing creditors remain unpaid and have allowable unsecured claims in the Debtors' bankruptcy cases.

165.    The Debtors failed to retain sufficient property to pay the indebtedness owing to their existing creditors.

166.    Even if the Defendants were to show that they paid consideration over and above the consideration as reflected in the bank accounts, the Grinding Transfers and CG Transfers should still be set aside as transfers done with actual intent of defrauding creditors.

167.    To show actual intent, the Courts rely upon "badges" of fraud.  In this case, the badges include, but are not limited to: (a) the Grinding Transfers and CG Transfers were done by Debtors to insiders or by insiders for the benefit of the insiders, (b) there was no or inadequate consideration paid, (c) the Grinding Transfers and CG Transfers were when the Debtors were insolvent, (d) the Debtors were under pressure from creditors at the time of the Grinding Transfers and CG Transfers and (e) the Grinding Transfers and CG Transfers left the Debtors with insufficient assets to pay their debts as they became due.

168.    This Court should set aside the Grinding Transfers and CG Transfers as fraudulent conveyances pursuant to S.C. CODE ANN. § 27-23-10 and 11 U.S.C. § 544.

## EIGHTH CLAIM FOR RELIEF
### [Fraudulent Conveyance Under 11 USC § 548 and § 550 – Howey, Howey Co., Camden, STGE, Deepe, FM,  HTR]

169.    Plaintiffs restate and reallege the allegations contained above as if fully set

forth herein, and the Bankruptcy Trustees specifically state as follows:

170.    Pursuant to 11 U.S.C. § 548(a)(1)(B), any transfer of an interest of the debtor in property that was made or incurred on or within 2 years before the date of the filing of the petition may be voided, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> a.    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> b.    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> c.    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> d.    made such transfer to or for the benefit of an insider or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

171.    GS, while insolvent or rendered insolvent as a result thereof, did, within two years of the filing of the above-mentioned petitions in bankruptcy, voluntarily and without adequate consideration, make the Grinding Transfers to Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR.  Further, CG, while insolvent or rendered insolvent as a result thereof, did, within two years of the filing of the above-mentioned petitions in bankruptcy, voluntarily and without adequate consideration, make the CG Transfers to Howey, Howey Co., HTR, and STGE.

172.    Some of the Grinding Transfers and CG Transfers to Howey, Howey Co, Camden, STGE, Deepe and FM were indirect transfers, after a fraudulent transfer to another entity that facilitated the eventual transfer to Howey, Howey Co, Camden, STGE, Deepe and FM.  For example, included in the Grinding Transfers and CG Transfers are

29

transfers to HTR.  HTR would then transfer funds to Howey, Howey Co, Camden, STGE, Deepe and FM.  Such transfers can be set aside from the eventual recipient pursuant to 11 U.S.C. §550 because the eventual recipient did not take the funds in good faith without knowledge of the initial fraudulent transfer.

173.   The Debtors received less than reasonably equivalent value in exchange for the Grinding Transfers and CG Transfers.

174.   Further, upon information and belief and pursuant to 11 U.S.C. § 548(a)(1)(A), the Debtors made the Grinding Transfers and CG Transfers with actual intent to hinder, delay, and defraud their creditors.

175.   The conveyed funds are not exempt from execution and liability for debts by the law of South Carolina; that, by virtue of the bankruptcy laws of the United States, the transferred funds, by reason of the above-described fraudulent nature of the Grinding Transfers and CG Transfers, remained a part of the assets and estate of Debtors, and passed to the Bankruptcy Trustees.

176.   In receiving the Grinding Transfers and CG Transfers, Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR, and Howey, Howey Co., HTR, and STGE, respectively, did not take "for value and in good faith" within the meaning of 11 U.S.C. § 548(c). Specifically, Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR knew, or should have known, at the time of the Grinding Transfers, of GS's insolvency, since such defendants were insiders of GS and should have been aware of the financial condition of GS.  Further, Howey, Howey Co., HTR, and STGE knew, or should have known, at the time of the CG Transfers, of CG's insolvency, since such defendants were

30

insiders of CG and should have been aware of the financial condition of CG. Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR did not give value to GS in exchange for the Grinding Transfers. Howey, Howey Co., HTR, and STGE did not give value to CG in exchange for the CG Transfers.

177. The Grinding Transfers and CG Transfers constitute a fraudulent transfer of the Debtors' assets which they transferred in order to hinder, delay and defraud creditors.

178. Pursuant to 11 U.S.C. § 548, the GC Trustee may recover from Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR the amount of the Grinding Transfers for the benefit of GS and GS Carolinas' estate. Further, pursuant to 11 U.S.C. § 548, the CG Trustee may recover from Howey, Howey Co., HTR, and STGE the amount of the CG Transfers for the benefit of CG's estate

179. The Bankruptcy Trustees request that this Court set aside the Grinding Transfers and CG Transfers as fraudulent conveyances pursuant to 11 U.S.C. § 548.

## NINTH CLAIM FOR RELIEF
### [Recovery of Avoided Transfers and Judgment against Defendants for Value of Fraudulent Conveyance Pursuant to 11 U.S.C. § 550(a)(1) – Howey, Howey Co., Camden, STGE, Deepe, FM, HTR]

180. Plaintiffs restate and reallege the allegations contained above as if fully set forth herein, and the Bankruptcy Trustees specifically state as follows

181. The Grinding Transfers and CG Transfers should be voided pursuant to S.C. CODE ANN. § 27-23-10 and 11 U.S.C. §§ 544, 548.

182. Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR were the initial transferees of the Grinding Transfers, or the entities for whose benefit the Grinding

Transfers were made. Howey, Howey Co., HTR, and STGE were the initial transferees of the CG Transfers, or the entities for whose benefit the CG Transfers were made.

183. Pursuant to 11 U.S.C. § 550(a), the GC Trustee is entitled to recover the Grinding Transfers from Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR and is entitled to a judgment against such defendants for the value of the funds transferred to them. Pursuant to 11 U.S.C. § 550(a), the CG Trustee is entitled to recover the CG Transfers from Howey, Howey Co., HTR, and STGE and is entitled to a judgment against such defendants for the value of the funds transferred to them.

184. Pursuant to the analysis of the bank accounts, the value of the funds transferred to Howey, Howey Co., Camden, STGE, Deepe, FM, and HTR is the amount of the Grinding Transfers and the value of the funds transferred to Howey, Howey Co., HTR, and STGE is the amount of the CG Transfers.

**TENTH CLAIM FOR RELIEF**
**[Racketeering, Influenced and Corrupt Organizations Act Claim – All Defendants]**

185. Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

186. As a result of Defendants' actions as described above, Plaintiffs suffered injury or damage to their business or property by reason of two or more acts of organized unlawful activity or conduct engaged in by the Defendants.

187. Defendants engaged in a pattern of racketeering activity, the racketeering activity was continuous, and the activity included at least two (2) predicate acts.

32

188.   At least one of Defendants' acts are or were something other than mail fraud, wire fraud, or fraud in the sale of securities.

189.   Defendants' actions and conduct as described above has resulted in pecuniary gain to the Defendants, causing significant damages to the Plaintiffs.

## ELEVENTH CLAIM FOR RELIEF
### [Unfair and Deceptive Trade Practices – All Defendants]

190.   Plaintiffs restate and reallege the allegations contained above as if fully set forth herein.

191.   As described above, the actions constitute unfair and/or deceptive trade practices as those terms are used in N.C. Gen Stat. § 75-1, et seq.

192.   The conduct complained of were in and affecting commerce, as that term is used in N.C. Gen Stat. §§ 75-1, et seq.

193.   Defendants' unfair and/or deceptive acts or practices are the direct and proximate cause of the injuries complained of.

194.   Plaintiffs have been damaged by Defendants' unfair and/or deceptive trade practices in an amount to be determined at trial.

195.   The damages should be trebled pursuant to N.C. Gen. Stat. § 75-16, and Plaintiffs should be awarded their costs and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## PRAYER FOR RELIEF

1.      Plaintiffs pray that the Court enter a judgment in their favor on the following claims against the following Defendants:

- Breach of Fiduciary Duty against Howey, Howey Co., Camden, STGE, Deepe, FM;
- Constructive Fraud against Howey, Howey Co., Camden, STGE, Deepe, FM;
- Piercing the Corporate Veil/Alter Ego against Howey, Howey Co., Camden, STGE, Deepe, FM;
- Conversion against all Defendants;
- Facilitation of Fraud/Civil Conspiracy against all Defendants;
- Breach of Contract against J. Callahan and HTR;
- Setting Aside of Fraudulent Conveyance Pursuant to 11 U.S.C. § 544 and S.C. CODE ANN. § 27-23-10 for Transfer Made Without Valuable Consideration against Howey, Howey Co., Camden, STGE, Deepe, FM, HTR;
- Fraudulent Conveyance Under 11 USC § 548 and § 550 against Howey, Howey Co., Camden, STGE, Deepe, FM, HTR;
- Recovery of Avoided Transfers and Judgment against Defendants for Value of Fraudulent Conveyance Pursuant to 11 U.S.C. § 550(a)(1) against Howey, Howey Co., Camden, STGE, Deepe, FM, HTR;
- Racketeering, Influenced and Corrupt Organizations Act Claim against all Defendants; and
- Unfair and Deceptive Trade Practices against all Defendants.

2.      That the cost and expense incurred in prosecuting this action be taxed against the Defendants, including all attorney fees allowed by law.

3.      That all issues triable by a jury be so tried.

4.      For all exemplary damages, including but not limited to punitive damages, as allowed by law.

5.      That those damages for violation of North Carolina General Statute, Chapter 75, be trebled and Plaintiffs be awarded their attorney fees.

6.      For all other relief, both legal and equitable, that the Court deems just and proper.

SIGNATURES ON THE FOLLOWING PAGE

REMAINDER OF THIS PAGE INTENTIONALLY BLANK

34

This the 8th day of February, 2021.

**JAMES, McELROY & DIEHL, P.A.**

<u>      s/ John R. Buric          </u>
John R. Buric, N.C. State Bar No. 22688
jburic@jmdlaw.com
Preston O. Odom, N.C. State Bar No. 29587
podom@jmdlaw.com
John R. Brickley, N.C. State Bar No. 41126
jbrickley@jmdlaw.com
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
*Attorneys for Plaintiffs*

**NELSON     MULLINS     RILEY    &amp;
SCARBOROUGH, LLP**

<u>      s/ B. Keith Poston         </u>
Brandon Keith Poston, S.C. State Bar No. 78397
Admitted *Pro Hac Vice*
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 799-2000
Facsimile: (803) 256-7500
keith.poston@nelsonmullins.com
Attorneys for Robert F. Anderson in his capacity as Chapter 7 Trustee for Grinding Specialists of the Carolinas, LLC; and Grinding Specialists, LLC.

35

**GLEISSNER LAW FIRM, LLC**

_____s/ Luke R. Gleissner_____
Luke R. Gleissner, S.C. State Bar No. 12707
Admitted _Pro Hac Vice_
Richard  R. Gleissner, S.C. State Bar No. 5389
Admitted _Pro Hac Vice_
1237 Gadsden Street, Suite 200A
Columbia, South Carolina 29201
Telephone: (803) 787-0505
Facsimile: (803) 712-4283
luke@gleissnerlaw.com                                    |
rick@gleissnerlaw.com
Attorneys for Janet B. Haigler in her Capacity as
Chapter 7 Trustee For Callahan Grading, LLC

36

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFFS' AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

This the 8th day of February, 2021.

**JAMES, McELROY & DIEHL, P.A.**

_____ s/ John R. Buric _____
John R. Buric, N.C. State Bar No. 22688
jburic@jmdlaw.com
Preston O. Odom, N.C. State Bar No. 29587
podom@jmdlaw.com
John R. Brickley, N.C. State Bar No. 41126
jbrickley@jmdlaw.com
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
*Attorneys for Plaintiffs*

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

_____ s/ B. Keith Poston _____
Brandon Keith Poston, S.C. State Bar No. 78397
Admitted *Pro Hac Vice*
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 799-2000
Facsimile: (803) 256-7500
keith.poston@nelsonmullins.com
Attorneys for Robert F. Anderson in his capacity as Chapter 7 Trustee for Grinding Specialists of the Carolinas, LLC; and Grinding Specialists, LLC.

37

**GLEISSNER LAW FIRM, LLC**

       s/ Luke R. Gleissner
_____
Luke R. Gleissner, S.C. State Bar No. 12707
Admitted *Pro Hac Vice*
Richard  R. Gleissner, S.C. State Bar No. 5389
Admitted *Pro Hac Vice*
1237 Gadsden Street, Suite 200A
Columbia, South Carolina 29201
Telephone: (803) 787-0505
Facsimile: (803) 712-4283
luke@gleissnerlaw.com                                          |
rick@gleissnerlaw.com
Attorneys for Janet B. Haigler in her Capacity as
Chapter 7 Trustee For Callahan Grading, LLC

38