IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00564-GCM

| | |
|---|---|
| JANET B HAIGLER,<br>ROBERT F. ANDERSON,<br>RUFUS ROAD PARTNERS, LLC,<br>KEITH L HAWTHORNE,<br>RIVERCROSS CAPITAL, LLC,<br>KLH ACQUISITION COMPANY, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>HIGH TENSION RANCH, LLC,<br>ANTHONY JARRETT CALLAHAN,<br>THE HOWEY CO., INC.,<br>CALLAHAN GRADING, LLC,<br>CAMDEN LAND CO., LLC,<br>GRINDING SPECIALISTS OF THE CAROLINAS, LLC,<br>STGE INVESTMENTS, LLC,<br>DEEPE, LLC,<br>FM CAPITAL, LLC,<br>DAVID S HOWEY,<br>GRINDING SPECIALISTS, LLC,<br><br>    Defendants. | **ORDER** |

**THIS MATTER** comes before the Court upon the Motion to Dismiss Plaintiffs' Amended Complaint (ECF Doc. 35), which was filed on March 15, 2021 by Defendants The Howey Co., Inc., Camden Land Co., LLC, STGE Investments, LLC, Deepe, LLC, FM Capital, LLC, and David S. Howey ("Howey Defendants"). Plaintiff Janet B. Haigler, in her capacity as Chapter 7 trustee for Callahan Grading, LLC, filed a response (ECF Doc. 39) on April 8, 2021. A joint response (ECF Doc. 40) was also filed by Plaintiff Robert F. Anderson, in his capacity as Chapter 7 trustee for Grinding Specialists of the Carolinas and Grinding Specialists, LLC, as well as Plaintiffs Keith

L. Hawthorne, KLH Acquisition Co., LLC, Rivercross Capital, LLC, Rufus Road Partners, LLC, and Trustee Haigler on April 8, 2021. Howey Defendants then filed a reply (ECF Doc. 42) on April 22, 2021. The matter, now being fully briefed, is ripe for consideration. For the reasons stated herein, the Court concludes that the Motion to Dismiss should be denied.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

In brief, this action relates to a Chapter 7 bankruptcy proceeding where the trustees and claimants entered into an approved settlement agreement that also executed a Joint Defense and Prosecution Agreement ("JPA") to facilitate the settlement. The bankruptcy court did not approve the JPA because approval of many of its terms would have been premature, but the Court approved the parties' agreement to jointly prosecute certain civil litigation, approved of the parties entering into other agreements to govern the jointly prosecuted litigation, and acknowledged that the JPA was discussed during the proceedings. Relevant to this Motion to Dismiss, the JPA listed the parties' counsel as Richard R. Gleissner and Luke R. Gleissner of Gleissner Law Firm, LLC for Trustee Haigler and Brandon Keith Poston of Nelson Mullins Riley & Scarborough, LLP for Trustee Anderson. Within the JPA, no new counsel was requested, and no new attorney-client relationship was formed between its parties at execution.

On October 9, 2020, the present action was filed as part of the parties' agreement to jointly prosecute certain civil litigation. In relevant part, the initial complaint ("Complaint") relies on bankruptcy law and the rights and powers of the trustees to seek the avoidance and recovery of transfers exceeding $16,000,000, and these transfers allegedly occurred due to the actions of David S. Howey, acting as power of attorney and agent for Keith Hawthorne. Notably, neither of the bankruptcy trustees signed the Complaint, nor did the counsel referenced in the JPA and approved by the bankruptcy court sign the Complaint. Rather, the Complaint was signed by John R. Buric

of James, McElroy & Diehl, P.A. On November 18, 2020, Brandon Poston, Richard Gleissner, and Luke Gleissner were granted *pro hac vice* admission to associate with Mr. Buric as local counsel.

On January 5, 2021, Howey Defendants filed a motion to dismiss the Complaint, in part arguing that the trustees were not properly joined in the suit because the Complaint was signed by Mr. Buric, who was not approved by the bankruptcy court to act as counsel on behalf of the bankruptcy trustees. Thus, Howey Defendants contended this Court lacked subject-matter jurisdiction over the bankruptcy claims. To address the matter, the trustees first requested an extension of time to amend the Complaint as of right, which was granted. The trustees then returned to the bankruptcy court, requesting that the bankruptcy court clarify that Mr. Buric had been previously approved as counsel, or alternatively requesting that the bankruptcy court grant approval *nunc pro tunc* as of April 16, 2020. After a hearing, which began on January 21, 2021, the bankruptcy court granted neither request, concluding that it had no authority to do so. However, the bankruptcy court did grant approval to hire Mr. Buric as counsel, and Mr. Buric was approved effective January 15, 2021. The bankruptcy court made no findings as to when an attorney-client relationship was formed with Mr. Buric, concluding only that it happened sometime between April 16, 2020 and the emergency hearing in January 2021.

Meanwhile, after the trustees' request for an emergency hearing with the bankruptcy court, they filed their Amended Complaint as of right in this action, which forms the basis for the present Motion to Dismiss. In Howey Defendants' renewed Motion to Dismiss, they still contend that because the Complaint was not signed by either the trustees or their court-approved attorneys, they were not proper parties to the initial Complaint. Thus, according to Howey Defendants, the named plaintiffs in the initial Complaint lacked standing to pursue the bankruptcy claims, and the Court

has no jurisdiction over the bankruptcy claims (Claim Seven, Claim Eight, and Claim Nine). Additionally, because the statute of limitations has since run on the bankruptcy claims, Howey Defendants argue the bankruptcy claims should be dismissed with prejudice. Howey Defendants also argue that the claims for breach of fiduciary duty (Claim One) and conversion (Claim Four) are time-barred. Further, Howey Defendants argue they did not owe KLH, Rivercross, or Rufus Road Partners a fiduciary duty and, thus, the claims for breach of fiduciary duty (Claim One) and constructive fraud (Claim Two) should be dismissed pursuant to Rule 12(b)(6). Lastly, Howey Defendants argue that the Racketeer Influenced and Corrupt Organizations ("RICO") Act claim (Claim Ten) should be dismissed because Plaintiffs failed to allege continuity of the scheme. Any additional facts are set forth in the discussion below.

## II. DISCUSSION

Howey Defendants argue that certain claims in the Amended Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) provides a defense for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a Rule 12(b)(1) motion challenging subject-matter jurisdiction is raised, the plaintiff bears the burden of proof. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may assert that the plaintiff failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Complaints need not give "detailed factual allegations," but a plaintiff must provide more than "a

formulaic recitation of the elements of a cause of action" or "labels and conclusions" to avoid dismissal under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must rise above a speculative level and complaints must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will "accept as true" all factual allegations. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### A. Bankruptcy Claims

The first issue here is whether the bankruptcy claims should be dismissed with prejudice for lack of subject-matter jurisdiction where Mr. Buric failed to acquire court approval to represent the trustees prior to signing the Complaint pursuant to Rule 11.[1] A bankruptcy court must approve the employment of one or more attorneys to represent a bankruptcy trustee, ensuring that the attorneys are disinterested persons prior to approval. 11 U.S.C. § 327(a) (2018). Mr. Buric signed the Complaint on behalf of the bankruptcy trustees on October 9, 2020, but he was not approved to represent the trustees until January 15, 2021. Howey Defendants contend that because Mr. Buric was not authorized to sign the Complaint on behalf of the trustees until after the Complaint was filed and, since Mr. Buric signed the Complaint under Rule 11 on behalf of the trustees, the trustees were not proper parties to the Complaint when it was originally filed. Consequently, Howey Defendants argue that the Court should dismiss the bankruptcy claims for lack of subject-matter jurisdiction because none of the other plaintiffs had standing to bring the bankruptcy claims, and the trustees were not proper parties to the action until after the statute of limitations had run.

---

[1] Rule 11 requires that a complaint must be signed by either an attorney of record or by a party personally, if the party is unrepresented. Fed. R. Civ. P. 11(a).

Article III of the United States Constitution requires "that a plaintiff filing suit in federal court have standing to do so." *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 786 (4th Cir. 2019). Moreover, plaintiffs must be the real party in interest. Fed. R. Civ. P. 17(a); *see also Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019) (distinguishing between Article III standing and status as the real party in interest). Issues regarding the identity of the real party in interest are classified as issues of prudential standing, rather than Article III standing, and may be cured after an action is filed. *Martineau*, 934 F.3d at 391 n.3. For bankruptcy claims, the real parties in interest are the bankruptcy trustees. *Id.* at 391.

Howey Defendants' argument is predicated on the theory that, simply because Mr. Buric was not yet approved by the bankruptcy court, his signature was invalid and the trustees were never parties to the Complaint but were, rather, added to the Amended Complaint after the statute of limitations had run. This argument discounts the undisputed fact that Trustees Haigler and Anderson are the real parties in interest for the bankruptcy claims and that it is abundantly clear Plaintiffs knew this when they named the trustees in the Complaint. Though Howey Defendants repeatedly infer that the trustees were added to the Amended Complaint and the parties who sought to bring the bankruptcy claims had no standing, this is not the reality of the situation. The trustees—who are the real parties in interest and the parties with constitutional standing for the bankruptcy claims—were parties to the Complaint, but simply failed to have the attorney who signed the Complaint on their behalf approved by the bankruptcy court prior to his signing the Complaint. Thus, this is not really a Rule 11 or Rule 17 issue. The real question is simply whether this Court is deprived of subject-matter jurisdiction where an attorney fails to acquire court approval to act on behalf of the bankruptcy trustees prior to signing a complaint on behalf of the trustees. After a thorough review of the matter, the Court concludes that it is not deprived of

subject-matter jurisdiction simply because Mr. Buric's signature on the Complaint was written prior to his having received approval to act as counsel for the trustees pursuant to Section 327.[2]

The Court's conclusion is supported by several aspects of the relevant persuasive law on the matter. To begin, none of the cases cited by the parties are controlling on this issue. However, the parties cite numerous persuasive cases. The notable trend in persuasive caselaw is that the cases center around whether an attorney who renders services on behalf of a trustee prior to receiving court approval can be compensated for the services. *See, e.g.*, *In re Triangle Chems., Inc.*, 697 F.2d 1280, 1282, 1291 (5th Cir. 1983); *In re Rennie Petroleum Corp.*, 384 B.R. 412, 415–16 (Bankr. E.D. Va. 2008); *In re T & D Tool, Inc.*, 125 B.R. 116, 119 (Bankr. E.D. Pa. 1991); *In re Fruits Int'l, Inc.*, 87 B.R. 769, 770 (Bankr. D.P.R. 1988); *In re Bob Grissett Golf Shoppes, Inc.*, 58 B.R. 996, 999 (Bankr. E.D. Va. 1986); *In re BSJ Tower Assocs.*, 35 B.R. 131, 132 (Bankr. D.P.R. 1983); *In re Benitez*, No. 8-19-70230-reg, 2020 WL 1272258, at *1–5 (Bankr. E.D.N.Y. Mar. 13, 2020); *In re Jones*, No. 10–32718–WRS, 2013 WL 1558088, at *2–4 (Bankr. M.D. Ala. Apr. 12, 2013). The theme in these and other similar cases is that, where an attorney was not approved prior to acting on behalf of the trustees, that attorney risks being foreclosed from receiving compensation for his or her work. In large part, the validity of the services rendered prior to receiving court approval is not challenged, which supports the Court's conclusion herein.

Additionally, until a recent ruling from the Supreme Court of the United States, bankruptcy courts throughout the country frequently approved attorneys *nunc pro tunc*. *See, e.g.*, *In re Roberts*, 618 B.R. 213, 216–17 (Bankr. S.D. Ohio 2020); *In re Benitez*, 2020 WL 1272258, at *1; *see also Kohout v. U.S. Trustee*, 513 B.R. 675, 680 (N.D. W. Va. 2014) (exacting standards for when it is acceptable to retroactively grant approval); *In re Se. Materials, Inc.*, No. 09–52606,

---

[2] This conclusion does not address whether Mr. Buric may be compensated for actions taken prior to receiving court approval under Section 327, as that issue is not before the Court today.

2010 WL 521121, at *1 (M.D.N.C. Feb. 12, 2010) (same); *In re Rennie*, 384 B.R. at 416 (same). The Supreme Court recently clarified that *nunc pro tunc* orders are only issued to "'reflect the reality' of what has already occurred," and that courts "cannot make the record what it is not." *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01 (2020) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)). Nevertheless, courts to analyze this issue after *Acevedo Feliciano* have simply recognized that the "*nunc pro tunc*" nomenclature was imprecise—not that retroactive approval of attorneys violates the statute or the relevant rules. *In re Roberts*, 618 B.R. at 216–17 (analyzing *Acevedo Feliciano* and concluding that, even if a *nunc pro tunc* order is not the appropriate means to authorize belated approval of attorneys, "the applicable bankruptcy statutes and rules laying the foundations for employment and compensation do not require employment to be authorized prior to performance of services"); *In re Benitez*, 2020 WL 1272258, at *1–2 (concluding that *nunc pro tunc* retentions would no longer be required but, rather, "[t]he only temporal requirement in the Code and Rules is that a professional must have been retained pursuant to section 327 to successfully obtain a court award of compensation"); *see also In re Jarvis*, 53 F.3d 416, 418 n.2 (1st Cir. 1995) (approving an attorney "post facto" to avoid using "the appellation 'nunc pro tunc,'" since it would be "unfaithful to the accepted usage of that term in connection with the correction of court records"). Thus, the vast array of caselaw where courts previously approved attorneys *nunc pro tunc*, which supports that the services rendered prior to approval are not invalid, has not been contravened by *Acevedo Feliciano*.

In light of *Acevedo Feliciano*, the bankruptcy court in our case concluded it did not have authority to approve Mr. Buric to act as attorney for the trustees *nunc pro tunc*. Instead, the bankruptcy court approved Mr. Buric effective as of the date the request to employ was presented to the bankruptcy court, which was January 15, 2021. The bankruptcy court made no ruling on

the significance of the trustees' error in failing to receive approval for Mr. Buric before he signed the Complaint and left that matter to this Court to decide. Even if the trustees' requested *nunc pro tunc* approval was not granted, the longstanding grant of such relief certainly counsels that courts do not find invalid services rendered by an attorney prior to receiving court approval.[3] This, then, also supports that the Court does not lack subject-matter jurisdiction simply because Mr. Buric signed the Complaint prior to receiving court approval to act as counsel for the trustees.

The policy principles underlying Rules 11 and 17 further support the Court's conclusion that the bankruptcy claims should not be dismissed. Rule 11 regards signing pleadings and requires that an attorney of record or the party should sign every pleading. Fed. R. Civ. P. 11(a). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.* Rule 17 governs the necessity of an action being prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a). "The Court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." *Id.* The plain language of the rules, even if not directly on point for the present motion, directs that parties should be given an opportunity to correct errors in their pleadings such as the signature error at issue in the present case.

Further in support of the Court's conclusion, it is well-known that procedural rules such as Rules 11 and 17 are promulgated to regulate attorneys and protect parties, not to penalize innocent plaintiffs. *See, e.g.*, *Wolford v. Budd Co.*, 149 F.R.D. 127, 130 (W.D. Va. 1993) (discussing the purposes of Rule 11 and refusing to dismiss a complaint where the attorney was not admitted to

---

[3] To be clear, the Court's reasoning herein should not be construed as approving Mr. Buric to act as the trustees' attorney *post facto*—as this Court has no authority to do so and the bankruptcy court has already refused to grant *nunc pro tunc* relief. Rather, the reasoning is only intended as discussion supporting the Court's conclusion that Mr. Buric's signature could serve as a valid signature on behalf of the trustees.

practice before the court when he signed the complaint). Where, as here, the trustees would be barred from a significant recovery if the Court dismissed the bankruptcy claims, and there is no harm to the defendants beyond the obvious costs to defend, justice would not be served in dismissing the bankruptcy claims. *See id.* at 129–30 (quoting *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1201 (D.C. Cir. 1983)) (explaining that, due to the contrast between the cost to defend and plaintiffs' bar from recovery by the statute of limitations, "substantial justice" required "that the Court not use the local rules to turn the error of [plaintiffs'] counsel into 'a lock on the courthouse door'"). Here, once the mistake was realized by the trustees, they took appropriate actions to correct the error by seeking the bankruptcy court's approval of Mr. Buric and then filing their Amended Complaint. The purposes underlying procedural rules and the trustees' correction of the error here also support the Court's decision not to dismiss the bankruptcy claims.

Nevertheless, the Court is mindful of the important policy rationale underlying Section 327 requirements. Requiring court approval before an attorney renders services for a bankruptcy trustee ensures that the attorney is not volunteering his or her services as an interested party and allows courts to "assess the wisdom or propriety of using estate assets in the manner proposed." *In re Rennie Petroleum Corp.*, 384 B.R. at 416; *see also In re Triangle Chems., Inc.*, 697 F.2d at 1285 (summarizing various principles supporting the importance of having attorneys approved by the bankruptcy judge). The importance of Section 327 is uncontroverted and, certainly, authorizing an attorney *before* services are rendered is preferable. *See In re Jarvis*, 53 F.3d at 421 (explaining that prior approval is preferred because of the policies underlying Chapter 11 bankruptcy proceedings); *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994) (elaborating on the same policies in a Chapter 7 bankruptcy proceeding). But Howey Defendants do not contend that Mr. Buric was acting on behalf of the trustees in an interested or otherwise improper manner. Indeed,

the bankruptcy court has already considered whether Mr. Buric should be approved as an attorney for the bankruptcy trustees and has approved him. There may be times when the services rendered by an attorney prior to receiving court approval should be called into question based on the principles underlying Section 327. No such concerns are raised here though and this, too, supports that the bankruptcy claims should not be dismissed.

### B. Statute of Limitations on Conversion and Breach of Fiduciary Duty Claims

The next issue for the Court is whether Plaintiffs' conversion claim should be dismissed pursuant to the applicable statute of limitations. "The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). "Typically, a claim for conversion accrues when 'some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property.'" *Lockerman v. S. River Elec. Membership Corp.*, No. 11 CVS 152, 2015 WL 3544521, at *7 (N.C. Super. Ct. June 8, 2015) (quoting *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 665 S.E.2d 478, 489 (2008)).[4] But, "there is an exception to this rule if the person has lawfully obtained possession." *Id.* "In that event, the true owner must demand return of the goods and subsequently receive an absolute refusal to surrender them." *Id.*

The Amended Complaint alleges that Mr. Hawthorne learned of the conversion no earlier than November 8, 2019, and further sets forth facts to support that there was lawful possession of the funds in question where Mr. Howey was acting as manager of the relevant entities. Thus, Plaintiffs have alleged facts supporting that the exception to the general rule governing the statute

---

[4] While Plaintiffs set forth law regarding South Carolina's conversion statute of limitations, in addition to setting forth North Carolina's statute of limitations, it appears that the parties and the Court agree that North Carolina law governs this issue.

of limitations for conversion applies in this case. According to the facts set forth, Plaintiffs' conversion claim should not be dismissed where the Complaint was filed on October 9, 2020.

Howey Defendants also referenced that Plaintiffs' breach of fiduciary duty claim was barred by the relevant statute of limitations but failed to set forth any argument on this matter in their Motion to Dismiss. Where, as here, a party briefly mentions an argument but fails to properly develop the argument in the party's brief, the Court may consider such an argument waived. *See Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012). However, even if Howey Defendants had not waived this argument, the three-year statute of limitations on the breach of fiduciary duty claim does not begin to run until "the claimant 'knew or, [by] due diligence, should have known' of the facts constituting the basis for the claim." *Toomer v. Branch Banking & Trust Co.*, 614 S.E.2d 328, 336 (2005) (quoting *Pitman v. Barker*, 452 S.E.2d 325, 332 (1995)). Here, the Amended Complaint alleges that the claimant knew or should have known about the facts forming the basis for the breach of fiduciary duty claim no earlier than November 8, 2019. Therefore, this claim should not be dismissed.

### C. Sufficiency of Breach of Fiduciary Duty and Constructive Fraud Claims

Howey Defendants further contend that the breach of fiduciary duty and constructive fraud claims should be dismissed pursuant to Rule 12(b)(6) as no fiduciary relationship existed with any entity other than with Mr. Hawthorne. "A power of attorney is an instrument in writing granting power in an agent to transact business for his principal." *O'Neal v. O'Neal*, 803 S.E.2d 184, 187 (N.C. Ct. App. 2017). There is a fiduciary relationship between a principal and agent, and "there is, as a general matter, little reason to draw distinctions between powers of attorney and contracts." *Id.*; *see also* N.C. Gen. Stat. § 32C-1-114 (2021) (listing an agent's duties to the principal). Additionally, managers owe fiduciary duties to the entities that they manage. *Id.* § 57D-3-21; *see*

*also Kaplan v. O.K. Techs., L.L.C.*, 675 S.E.2d 133, 137 (N.C. Ct. App. 2009). The Amended Complaint alleges that Mr. Howey acted as manager for the relevant entities and, as set forth above, managers owe fiduciary duties to the entities they manage. Therefore, the Court concludes that Plaintiffs have pled sufficient facts to support that a fiduciary duty may have existed and finds that the claims for breach of fiduciary duty and constructive fraud should not be dismissed.

### D. Sufficiency of RICO Act Claim

Lastly, Howey Defendants contend that the Court should dismiss Plaintiff's RICO Act claim under Rule 12(b)(6), arguing that Plaintiffs did not allege the continuity-of-activity requirement needed to survive a motion to dismiss. "The Supreme Court has explained that a civil RICO claim has four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). To prove the third element, "a RICO plaintiff must show 'a relationship between the predicate acts and the threat of continuing activity.'" *Id.* at 259 (cleaned up) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The continuity requirement is a closed-ended and open-ended concept, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241). For a closed-ended racketeering pattern, there is a careful assessment of "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id.* (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). A minimum of two predicate acts must be alleged, but two predicate acts does not necessarily establish a pattern. *G.E. Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001). Typically, for closed-ended continuity, "[p]redicate acts extending over a few weeks or months and threatening

no future criminal conduct do not satisfy this requirement." *Id.* "Open-ended continuity may be established where, for example, the 'related predicates themselves involve a distinct threat of long-term racketeering activity,' or where the predicate acts 'are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242–43).

Here, viewing the facts in the light most favorable to Plaintiffs, Plaintiffs allege several predicate acts occurring from March 2017 through July 2017. Plaintiffs further set forth that these allegedly fraudulent bankruptcy actions continued through late 2018. The Court finds that Plaintiffs have alleged sufficient facts to support the RICO Act claim, and it should not be dismissed pursuant to Rule 12(b)(6).

### III. ORDER

**IT IS THEREFORE ORDERED** that the Motion to Dismiss Plaintiffs' Amended Complaint (ECF Doc. 35) is **DENIED**.

**SO ORDERED**.

Signed: August 13, 2021

Graham C. Mullen
United States District Judge